**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **METRO BROKERS, INC.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION FILE NO.:** |
| ) | |
| **TRANSPORTATION** ) | |
| **INSURANCE COMPANY** ) | |
| ) | **JURY TRIAL DEMANDED** |
|     **Defendant.** ) | |
| _____) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Metro Brokers, Inc., who by and through counsel files this Complaint for damages showing the Court as follows:

### PARTIES

1.

Plaintiff Metro Brokers, Inc. ("Metro Brokers") is a Georgia corporation with a registered agent in the State of Georgia, County of Fulton.

2.

Defendant Transportation Insurance Company ("CNA") is an insurance company based in Chicago, Illinois. It is licensed to sell insurance in Georia.

3.

Service may be perfected on CNA by serving its Registered Agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this case because there is complete diversity among the parties and the matter in controversy exceeds $75,000.  This Court has personal jurisdiction over CNA.

5.

Venue is proper in this Court because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district as set forth in more detail below.

## FACTUAL BACKGROUND

6.

Metro Brokers is a real estate brokerage company with its principal place of business in Fulton County Georgia.

7.

Metro Brokers purchased an insurance policy from CNA, Policy Number 2072213730 ("the Policy"), which insured Metro Brokers at the time of the events

described herein. A copy of the Policy is attached to this Complaint as Exhibit

"A." Policy Section A.1. states:

> We will pay for direct physical loss of or damage to Covered
> Property at the premises described in the Declarations caused
> by or resulting from a Covered Cause of Loss.

8.

Policy Section A.5. provides that:

> Additional Coverages may be attached to this Policy
> (designation would appear in the attached form(s)). Unless
> otherwise stated, payments made under these Additional
> Coverages are in addition to the applicable Limits of Insurance.

9.

The Policy contains an "Additional Coverage" endorsement entitled

"Forgery and Alteration." That endorsement states in relevant part:

> 1. We will pay for loss resulting directly from 'forgery' or
> alteration of, on, or in any check, draft, promissory note, bill of
> exchange, or similar written promise, order or direction to pay a
> sum certain money, made or drawn by or drawn upon you, or
> made or drawn by one acting as an agent or claiming to have
> been so made or drawn.
>
> We will consider signatures that are produced or reproduced
> electronically, mechanically or by facsimile the same as
> handwritten signatures.
>
> We will pay for loss that you sustain through acts committed or
> events occurring during the Policy Period. Regardless of the
> number of years this insurance remains in force or the number

3

of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

\* \* \*

5. With respect to this Additional Coverage, occurrence means all loss caused by any person, or in which that person is concerned or implicated, either resulting from a single act or any number of such acts, whether the loss involves one or more instruments.

10.

The term "forgery" is defined in the endorsement as:

The signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose.

11.

Metro Brokers maintains multiple bank accounts, including client escrow accounts, with Fidelity Bank ("Fidelity").

12.

Metro Brokers utilized Fidelity's Automated Clearing House ("ACH") system to effectuate payments, such as payroll, and other transfers of funds from Metro Brokers' Fidelity bank accounts.

13.

ACH transfers require an electronic "signature" in order to be validly ordered and executed.

14.

On or about the morning of December 14, 2011, Metro Brokers' personnel discovered anomalous activity with one of its operating accounts. Metro Brokers immediately informed Fidelity and began a review of activity on all of its accounts. This research revealed that a thief had initiated unauthorized ACH payroll requests from one of Metro Brokers' business accounts at Fidelity. The thief forged Metro Brokers' electronic signature, ordering withdrawal of $89,097.79 on December 13, 2011. (the "First Withdrawal"). The First Withdrawal was without Metro Brokers' prior knowledge or consent.

15.

At the same time that Metro Brokers discovered the First Withdrawal, it also became aware that its electronic "signature" had also been forged to authorize additional ACH withdrawals. These pending ACH requests totaled $99,653.76 (the "Second Withdrawal"). The Second Withdrawal was scheduled to occur on the afternoon of December 14, 2011. Metro Brokers at no time consented to the Second Withdrawal and had no knowledge thereof prior to December 14, 2011.

16.

Upon learning of the First Withdrawal and the Second Withdrawal on the morning of December 14, 2011, Metro Brokers immediately contacted Fidelity and informed it of the unauthorized ACH payroll requests - the First Withdrawal and the pending Second Withdrawal. Fidelity informed Metro Brokers that it could not stop the pending Second Withdrawal.

17.

Between the First Withdrawal and the Second Withdrawal, forger(s) successfully stole $188,751.55 from Metro Brokers' accounts.

18.

At the request of Metro Brokers, Fidelity successfully recovered $34,475.63 of the unauthorized withdrawals from the banks receiving Metro Brokers' account funds. Fidelity was unable to recover the remaining $154,275.92 (the "Unauthorized Withdrawals").

19.

On December 21, 2011, Metro Brokers informed CNA by phone of its loss.

20.

The amount of the Unauthorized Withdrawals is within the Policy's coverage limits for losses caused by forgery.

21.

On or about January 25, 2012, CNA denied coverage under the Policy.

22.

On or about May 9, 2012, Metro Brokers, through undersigned counsel, challenged CNA's denial and demanded coverage pursuant to O.C.G.A. § 33-4-6. A copy of the May 9, 2012 letter (the "Demand Letter") is attached to this Complaint as Exhibit "B."

23.

CNA responded by letter dated June 18, 2012, again denying coverage under the Policy. CNA took the position that a Trojan computer virus "caused" Metro Brokers' losses, and that the Policy does not cover such losses.

24.

No computer virus forged Metro Brokers' "signature" for the First Withdrawal or the Second Withdrawal.

25.

Metro Brokers has complied with all conditions precedent to the bringing of this action, or if Metro Brokers has failed to meet any such condition, its failure is excused or is the fault of CNA.

26.

Metro Brokers has hired the undersigned attorney to represent it in this cause and through all ensuing appeals and has agreed to pay a reasonable fee thereto.

## COUNT I

## BREACH OF CONTRACT

27.

Metro Brokers re-alleges and incorporate by reference all preceding paragraphs of this Complaint as if set forth fully herein.

28.

CNA agreed to provide insurance to Metro Brokers, which insured them against loss arising out of the forgery of "any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain, money, made or drawn by or drawn upon you, or made or drawn by one acting as an agent or claiming to have been so made or drawn." In consideration thereof, Metro Brokers timely paid all premiums due and CNA issued the Policy. Metro Brokers has a contractual right to the coverage provided under the Policy. Metro Brokers met all contractual obligations as required under the Policy.

29.

CNA intentionally and wrongfully refused to make payment in full to Metro Brokers for all losses and damages arising from events described herein.

30.

Pursuant to applicable law, Metro Brokers made formal demand on CNA for payment by First Class U.S. Mail and facsimile transmission May 9, 2012 pursuant to O.C.G.A. § 33-4-6.

31.

As a result of said breach of contract, Metro Brokers has suffered damages. Metro Brokers therefore seeks special, compensatory, and general damages arising from said breach in the amount to be proven at trial, which amount is in excess of $154,275.92.

## COUNT II

## BAD FAITH UNDER O.C.G.A. § 33-4-6

32.

Metro Brokers re-alleges and incorporate by reference all preceding paragraphs of this Complaint as if set forth fully herein.

33.

Before filing the present action, Metro Brokers sent a Demand Letter to CNA pursuant to O.C.G.A. § 33-4-6.  *See* Exhibit "B." More than 60 days has expired since Metro Brokers sent CNA the Demand Letter and CNA refused to pay Metro Brokers' claim.  CNA's failure to pay the claim is done in bad faith.

34.

Moreover, CNA has dealt with Metro Brokers unfairly and in violation of its duties and responsibilities as an insurance company under Georgia law.  Georgia law enumerates several acts that constitute "unfair claims settlement practices," including, without limitation:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue;…

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies;

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;   [and]

(6) Refusing to pay claims without conducting a reasonable investigation.

*               *               *

*See* O.C.G.A. § 33-6-34.

35.

CNA engaged in each of the unfair claims settlement practices enumerated above and has acted in bad faith.

36.

CNA has dealt with Metro Brokers unfairly and in violation of Georgia law.

37.

As a direct and proximate result of CNA's bad faith, and unfair and deceptive practices, Metro Brokers has been damaged in an amount to be proven at trial.

38.

Metro Brokers is also entitled to additional damages under O.C.G.A. § 33-4-6, attorney fees under O.C.G.A. §§ 33-4-6 and 13-6-11, and prejudgment interest under O.C.G.A. §§ 33-4-6 and 51-12-14.

## **PRAYER FOR RELIEF**

WHEREFORE, Metro Brokers hereby **DEMANDS** a trial by jury and respectfully request the following relief:

(a) Process be issued and served according to law;

(b) That Metro Brokers be awarded damages of at least $154,275.92;

11

(c) An award of such general, special, and compensatory damages as are warranted and proven at trial arising from CNA's breach of contract and bad faith refusal to pay Metro Brokers' legitimate insurance claim which amount is to be proven at trial and permitted by O.C.G.A. § 33-4-6;

(d) Metro Brokers be awarded all actual attorney's fees, costs of litigation and interest;

(e) That all costs of this action be case against CNA;

(f) That Metro Brokers be awarded such additional damages, remedies, or relief as the Court may deem just and proper.

    Respectfully submitted this 29th day August 2012.

**LAW OFFICE OF DAVID J. HUNGELING, P.C.**

/s/:  David J. Hungeling
David J. Hungeling
Georgia Bar No. 378417
Adam S. Rubenfield
Georgia Bar No. 419033
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
Phone: 404-574-2466
Fax: 404-574-2467
david@hungelinglaw.com
adam@hungelinglaw.com
*Attorneys for Plaintiff*